Good morning, your honors. May it please the court. I am Edgardo Quintanilla, attorney for the petitioner. My client is a 41-year-old Mexican woman who came to the United States with that inspection in 1998. She has two United States citizen children, the oldest of whom is 17, the youngest 13. It is undisputed that Ms. Mora is Spanish-speaking, that she is a lay person. And she's watered the record shows that she's a sitter, a painter, and at a fast food restaurant. In short, she's an unsophisticated person. She needs like 30 more days of tolling, right? That is the issue in this case. I have a question. Now, there appears to be an indication that the way she finds out about this is her husband calls the 800 number sometime between October 24th and March of 2005 and learns that there's an issue. However, the district court started to run, I'm not sorry, the immigration court picked what date as when we started the 180 days running. In May, right? In May of 2005, government counsel contends that that is the triggering. All right, are we bound by the date that? Absolutely not. Well, I would, well, I guess, but then I'm surprised that you say that because then I could find that October 2004 was the triggering date. And then you'd be in worse shape. That is correct, Your Honor. However, government counsel basically says that it is May 2005. Well, no, I'm not, I don't care what, I don't care what you all say. I do care, but not in that sense. What I'm saying is the lower, you know, the agency found May of 2005 as the date. That's correct. So is that a factual finding that I have to give deference to and that's how I count the 180 days? The answer is no, because Senator Alvillo de Leon, 410 F. Ferret, 1099, says that equitable tolling will be applied in situations where despite all due diligence, the party requesting equitable tolling is unable to obtain vital information. Well, no, what you're going to argue from there, if that's the triggering date, then what you're going to argue is because the government took all this time getting the information to you and they didn't have it until October that you should be entitled to 30 more days and then it's timely, right? That is correct. So you're not arguing moving the May date. You don't want me to move it to 2004, do you? No, Your Honor. Because then you've got to get a lot more tolling. Either way, either way. Our argument, we have two arguments here. Our main argument is that the vital information in this case was discovered and ensured and given to me. It seems that the difference between the government's view and your view is whether the triggering date is when she finds out that the person she was dealing with was not who she thought it was and really was in fact not a lawyer, which is what she found out in May, right? That is correct. Or in other words, so she had reason to think that there was a fraud going on, perhaps. But what she didn't or was it when she knew that not only was there a fraud going on, but there was a fraud that made a difference to her case, which is what she didn't know until September. That's really the distinction. And it would be the distinction, I suppose, with regard to Judge Callahan's example as well, because once she might have found out that something had happened that she didn't know about, but whether she knew that something else could have happened had it been done right is a different question. That is correct, Your Honor. So your basic argument is that our case law says that it's the date in which she knows that something, not only that there was some shenanigans going on, but that it actually resulted in something happening in her case, which if it hadn't happened might have come out otherwise. I believe that it is one that is a conclusive when the alien in this case, Mrs. Mora, when there is a conclusion, where she can draw a conclusion that there was ineffective assistance of counsel. Substantively, not only that the person was a fraud. That is correct. And the preposition for the case is found at Rodriguez-Lattice, B.I.N.S. 282 F. Ferrer at 1225. And so the triggering date, this is also what I mean, is when you counsel, in this case my law firm, informs her that, look, it took all this time for the immigration court to have provided us a review of your file. All right. And now that it's been reviewed, you're being advised that you do have this claim. And that took place in October of 2005. So why do you wait and let the 180 days go by when why don't you just hurry up and get it filed? Because when Mrs. Mora came to my law firm and she says there is a problem, I have an order of removal in absentia. At that point, what an immigration lawyer has to do is, all right, let's review the file and see what has taken place. And at that point, the strategy is to decide what is the legal theory that an attorney, an immigration lawyer, is going to use to reopen a case. There is only not one theory to reopen this case. For example, a motion to reopen can be filed at any time if the person never received notice. For example, the administrative file is not only the written record, but it's also, there has to be magnetic tapes that can be heard through, and a review of those tapes might show that the immigration judge never gave any advices to this particular alien. So how long did the government delay you in this process? The request was made on June 1, 2005. The file was made available by the Immigration Court in Los Angeles until the end of September 2005. It is a similar situation in Albillo de León. In that case, the alien requested his entire file through a FOIA in September of 1999, and he received the FOIA until August of 2000. It was at that point that he began to seek assistance or counsel. So the equitable polling applies, despite all due diligence, during the time when a party is unable to obtain vital information. So you met with your client on October 13, and then you filed the document when? The document was filed in December. Okay. So either, even if we take the, so if that's the triggering date, October of 2005, the motion to reopen was filed within the period when you're supposed to file it. If the triggering date, let's say for sake of argument, is taken as of May of 2005, we would contend that under Albillo de León, the period of time that the Immigration Court delayed us from finding out has to be taken into account. So you need 30 days of tolling. That is correct, Your Honor, and that is our basic argument. So you say you could either figure it from the beginning of October directly, or you could figure it from May, but take out the time that the information wasn't made available. That is correct. Under Albillo de León, let's say, and the discourse holding in Albillo de León, you have to take into account that period of time. Sir, I would like to… Counselor. Yes, Your Honor. Exactly what did you know on October 13 that wasn't known before? Right. Number one, what should have been known, and this was one of my associates at the time, what should have been known was that the way to go on this particular case was for a claim of ineffective assistance of counsel against two people. One, an attorney, Mr. Hawkins, who already had filed a motion to reopen saying why he had that shown up to court, number one, and number two, saying that through no fault of Mrs. Mora's fault, Mrs. Mora wasn't the impression that she didn't have to show up. But it turned out, in discussion with Mrs. Mora, that it had been the non-attorney with whom Attorney Hawkins was working together that this gentleman by the name of Coronado, who had advised Mrs. Mora that her case was going to be rescheduled and joined with that of her husband. But that she presumably knew at the time she came to you. What she didn't know was that there had already been a motion to reopen filed. At that time, she knew that there was a problem. They had a motion. However… I thought she didn't know there was a motion. I thought she knew that they said they were going to straighten it out. But she didn't know that it actually had filed a motion. As an unsophisticated woman, she wouldn't know whether she had any deadlines or what her legal options were going to be. That's why in May 2005, she came to me. And when we undertook to review her immigration court file, that was the right path to go in dealing with this case. Okay. Thank you very much. You can use up your time. Ms. Cain. Good morning, Your Honors. May it please the Court. Kylie Cain on behalf of the Attorney General. If I can just get down to the main issue here. The question is whether review of the file revealed any vital information that bears on the claim, the claim being ineffective assistance of counsel and notary fraud against Mr. Coronado and Attorney Hawkins below. It's the government's position that although there was – actually, I wouldn't characterize it as a delay in reviewing the file. It does take some time to get the file. There's no evidence that the government was delaying on purpose or there was any sort of fraud on the part of the immigration court to get in the file. It takes some time. You put in a request and it took, you know, three months and some change to get that file. And that seems reasonable. But the question is whether to toll during that period. And under the court's case law, and there are two cases that I would direct your attention to. One counsel mentioned, that's the Obeo case. And the other case is Valeriano, if I'm pronouncing that correctly. And that's the brief that – the case that the government cited in our brief. And both of those cases involve the question of whether you continue to toll while the alien's new counsel is trying to obtain information from the government. And I would submit that this case is more like the Valeriano case where basically they were trying to get DHS to join in a motion to reopen. And so they were waiting, which, again, it takes several months for these requests to be adjudicated. And they waited to file their motion to reopen for ineffective assistance of counsel until DHS had provided a response, the request to join in. And the court found that what the new counsel was essentially doing was trying to obtain non-vital information that would help the motion to reopen. It would be better if the government did, in fact, join in. And if they had a strong case, you know, the government could join in and would join in in the event that there was a strong case. Well, what would he – if he had filed in May, what would he have said? He would have said these people who said he was a lawyer wasn't a lawyer. And that they told her that she didn't have to come and it was their mistake. But, in fact, as it turned out, they had already been in a motion to reopen essentially saying that. So surely that would have been a futile and useless motion to reopen. Well, the government's position, though, is that there's nothing revealed in the file that changes what her motion to reopen to the immigration judge would have said. Well, first of all, I don't know whether that's true or not. But assuming it's true, what's odd about that is that it's retrospective. In other words, if you were the lawyer in this case, wouldn't you have done exactly what they did and said, there's no – it doesn't make any sense to be filing a motion to reopen until they know what the lay of the land is? That's where I take issue, actually, because all of the things that Mr. – that new counsel said in the motion to reopen are things that they already knew and not things that he would know from talking to the client. But he didn't know that until he got the file. As he said, there could have been something in that file that gave a completely different view. Or it could have made it frivolous. Or, you know, if you sign declarations or something and it turns out that you haven't – you know, it's not based on correct statements, I mean, you are an officer of the court. But he's not – it's the alien who has to file the declaration. So, you know, I don't know. Wouldn't you want to advise your client, well, let's make sure that that's really what happened before you sign something under penalty of perjury? But she knows all of the things that have happened. She knows that there's an in absentia order. She knows that she was placed into removal proceedings when Mr. Coronado filed a frivolous asylum application. But what she apparently didn't know was that there had been an earlier motion to reopen filed and that this was, therefore, a seconder's success, a seconder's success. That's habeas language. But it was a second motion to reopen. And so they still would have had to have a tolling argument even in the first place. I mean, that's another problem, isn't it? In other words, if this was a second motion to reopen, it still would have had the problem of having to have a tolling argument, because even if it was timely, it was second. I just don't see how – Is that right? Right. There's a number bar as well as a number. Right. So they still would have had to have a basis for tolling even then. Right. That's right. But what she knew prior to that, basically this is the gist, is that the government is contending she knew all of the facts that formed the basis of her inflection. And he wouldn't have known that. So, therefore, what he would have filed at that point would have been a useless piece of paper because it would have not dealt with the fact that there was an earlier motion to reopen filed, and it wouldn't have dealt with any equitable tolling argument because he had no reason to do that. So there was important information, which is that fact that there was an earlier motion to reopen filed. But you have to look at what the fraud is because when you're dealing with a notary issue as well as this attorney issue, you're looking at how was the alien defrauded by these people and what was the ineffective assistance of counsel given. Mr. Coronado, the notary, was trying to – or was telling her that he was fixing the ineffective assistance of counsel, and she, in fact, filed a complaint with the State Bar against Attorney Hawkins. Now, we know – And that's what's so mysterious about this. After the motion to reopen was already denied, why did he tell her to do that? Well, he was defrauding her. I mean, the record – Sorry? He was taking her for her money. There's no question about that. No, a little bit of the problem is – and you probably have noticed this, and I'm going to exclude present company – but, you know, some of the worst practice that we see in this Court has to do with the immigration bar. I mean, you know, you wouldn't think that people could find that much ineffective assistance of counsel or that many people out there taking money from people and not doing what they're supposed to do. I mean, you don't see that with – you don't see that with AUSAs and deputy public. You just don't see that. But, I mean, we see, really, a boatload of it. Right. And – We see it, too. And, yeah, and – Well, and that's what makes this case tough is because there's not a question as to this woman's credibility. There's not a question as to what she's attesting to in her affidavit. It seems pretty clear that Mr. Coronado put her into removal proceedings without her consent, you know, didn't file appropriate documentation, told her not to go to her hearing. Those things aren't in question, and they're not actually before the Court. What's before the Court is once she learned of that, once she knew Mr. Coronado was not an attorney, once she knew she was ordered, removed, in absentia, and, in fact, placed in removal proceedings without her consent by the filing of an affirmative asylum application, which was frivolous, that is the date that she knew that the clock begins to start running. She goes to the current counsel, and she tells him, I have an in absentia order, I never meant to be placed in proceedings, and I filed a state bar complaint against Attorney Hawkins. That's what forms the basis of the ineffective assistance of counsel claim, and all of those things were known on May 2005 when she stepped in for – But counsel, counsel, at bottom, a prudent attorney at this point wants the government's file to see what else. I just can't understand you thinking that the bare facts which this immigrant knew, but knew not the significance of, and knew not what she could do about it, and the lawyer wants to be sure. Now, when I was practicing law, you wouldn't find me going ahead with a new motion to reopen not knowing what's in the government file and what has taken place, and that's something, a hurdle that I just can't see you crossing. Well, I have two responses. My first is that what you can do to assure yourself that he knew all of those facts when the client came into the office is look at what he filed with the immigration judge. Were any of the documents contained in her file that she received in September in the motion to reopen before the immigration judge? It sounds a little bit more like you're essentially arguing ineffective assistance of this counsel than you are arguing – you know, there are instances where someone's not diligent, where when you're talking about that you know you're in removal, and then they sit around for months and months and months, and they never even go talk to a lawyer. Here it seems to me, even though Mr. Quintanilla seems to say that I can pick the date, I can pick any date, it seems to me that the agency made a finding that the May date was the date. Right. And that I have to give that some – it seems to me to be a factual finding. Right, and I think the May date is correct because what the board was doing – But isn't it a factual finding, though? I mean, even you happen to agree with it. He maybe doesn't happen to agree with it, but it seems like they heard everything that you're talking about, and that agency said this is the date that I'm going to start counting from, and this is when I think that, you know, that's when she knew something. Right. I do think we're stuck with the date. That's what the immigration judge found, the date that the – Because whereas if you say you put the date back in October of 2004, then maybe she's not diligent taking so long going to look for a lawyer. Right. And I think, you know, that could be an argument the government can make. The reason that we're not – But I don't think you can after they say that this is the date. Well, but if I can explain why they picked that date and not the October date, it's because she's not only alleging ineffective assistance against the attorney, Mr. Hawkins, but also against Mr. Coronado. And she thinks Mr. Coronado this whole time is fixing her case. Right? She receives the in absentia order, she knows about it, and Mr. Coronado says, you know, Mr. Hawkins and I are going to fix this. So she's still being misled. So what it comes down to, if you take the May date, is whether the agency was entitled under our case law to discount the need of – to not take out the time that it took for the lawyer to get the file. That's what it amounts to. Right. That's right. That is the crux of the case. But the reason I'm having trouble with your argument, which could otherwise – I don't know what's your argument, I don't know what's your argument. I'm just trying to get a sense of what turned out, in the end, to be in the file. But certainly, in terms of what Judge Fletcher was saying, who knows what would have turned out to be in that file. So the notion that the – that the – that from the fact that it turned out there was nothing additional, therefore you shouldn't take out the period of time that he took to do due diligence doesn't necessarily follow. Well, the problem that I – I do understand that point, I take that point, because he's trying to be careful here and, you know, not get into a situation like you're saying about filing things that are frivolous or, you know, need some evidence. But I would caution the Court against making a rule that says that – because there is no case law that he's citing to you that says that you get to ask for your file. Of course, it would all be fixed pretty well if you made it a lot easier for people to look at the file. I mean, if somebody wants to look at a district court file, you go down to the district court the next day and you look at the file, so there wouldn't be any excuse. I would appreciate that, too, because we have issues with the file. So we should just put in a request for that for everyone. I mean, I would say, though, that this is not an unusual amount of time it takes to review a file. Just because – Well, not usually, because I think when you were here yesterday, we had the case that had been around for 18 years. So this is – this is just a blink. Right. I mean, this is the immigration process. Things are slow, and that's unfortunate for both parties. Okay. Thank you very much. And, again, a useful argument. And the case of Perdomo v. Holder is submitted, and we'll go on to Evagion v. Holder.
judges: Fletcher B. , Berzon, Callahan